# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| DORCHESTER HOLDINGS I, LLC,<br><br>        Plaintiff,<br>v.<br><br>US DEVELOPMENTS, LLC,<br><br>        Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT** |

COMES NOW the Plaintiff Dorchester Holdings I, LLC, and for its Complaint against Defendant US Developments, LLC, avers as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Dorchester Holdings I, LLC ("Dorchester Holdings") is a limited liability company organized and existing under the laws of the state of South Carolina. The members of Dorchester Holdings are citizens of Virginia, California, and Colorado.

2. Defendant US Developments, LLC ("US Developments") is a limited liability company organized and existing under the laws of the state of North Carolina. Upon information and belief, all of the members of US Developments are citizens of North Carolina.

3. This Court has personal jurisdiction over Defendant because, among other things, the contract between Plaintiff and Defendant provides for jurisdiction in North Carolina and Defendant is present and regularly transacts business in North Carolina.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

5. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant US Developments has a principal place of business at 5925 Carnegie Blvd Ste 200, Charlotte, North Carolina, and therefore resides in this district.

6. This action is brought to determine the validity of a contract purported to exist between the parties. Because Defendant seeks to enforce a contract comprised of unconscionable and indefinite terms, because the contract's purpose has been frustrated, because the contract has been abandoned, a justiciable controversy exists between Plaintiff and the Defendant.

## BACKGROUND

7. On March 7, 2003, US Development's principal, Stephen Rosenburgh ("Rosenburgh"), purchased roughly seventy-five acres of land in Dorchester County, South Carolina ("the Property") for $273,160.00 through US Land Investments, LLC, an entity he controlled.[1]

8. One month later, on April 8, 2003, Rosenburgh transferred the Property from US Land Investments, LLC, to Legend Oaks Commerce SC, LLC, another entity he controlled, for $1,760,000.00.

9. Three years later, upon information and belief, Rosenburgh approached Evelyn Munden ("Munden") with a plan for her to purchase the Property from Legend Oaks Commerce SC, LLC and develop the Property through US Developments.

10. On March 31, 2006, before she even purchased the Property, Munden entered into a Development Agreement with US Developments ("the Development Agreement") through an entity named Worldwide Golf Associates, LP ("Worldwide Golf Associates"). (Ex. A).

---

[1] At the time, US Developments was called US Land Developments, LLC. The name of the company changed to US Developments in 2019.

11. On May 22, 2006, Legend Oaks Commerce SC, LLC then sold the Property to Worldwide Golf Associates for the contemplated price: $3,250,000.00.

12. Munden created an entity to hold the Property, Dorchester Holdings I, LLC, and transferred the Property to that entity on November 20, 2006. Worldwide Golf Associates then assigned its rights and obligations under the Development Agreement to Dorchester Holdings I, LLC.

13. The Development Agreement includes a number of unconscionable terms:

   a. Under Section 2.1, the Development Agreement was to "continue in effect until [the Property is] developed and sold." The Development Agreement includes no time within which the Developer must develop the Property and includes no other termination date.

   b. Under Section 3.1(b), the Property Owner (Dorchester Holdings) is required to pay the Developer (US Developments) a "management services fee" of at least $5,000 per month in perpetuity.

   c. Under Section 3.1(c), the Property Owner is required to pay the Developer 30% of any appreciation in the Property's value upon sale.

   d. Under Section 3.1(a), the Property Owner is required to pay the Developer a "sales commission" of 6% of the gross selling price when any portion of the Property is sold.

   e. Under Section 4.4, the Property Owner cannot sell the Property without the Developer's consent, regardless of whether the Developer develops the Property.

14. When Worldwide Golf Associates and US Developments entered the Development Agreement in 2006, multifamily developments and other commercial developments were a permitted use of the Property.

15. On May 21, 2007, however, Dorchester County imposed a historical overlay over the Property, which limited the Property's permitted uses to that of a Conservation Zoning District. Dorchester County has continued to limit the uses of the Property after that, culminating in rigid design guidelines adopted in March 2019.

16. After the adoption of the historical overlay, the Property could not be commercially developed with multifamily developments, planned developments, or other commercial shopping or rental space as intended.

17. The purpose of the Development Agreement was frustrated by the adoption of the historical overlay.

18. Thus, the Development Agreement was never followed, and US Developments did not develop the Property in any way.

19. US Developments failed to perform under the Development Agreement by violating the following provisions:

    a. Under Section 4.2(c), the Developer was required to "maintain and operate books of account in the Owner's name." US Developments failed to maintain or operate such books of account.

    b. Under Section 4.2(m), the Developer was required to "prepare the Owner's regular financial reports and submit the same to the Owner's lenders and investors." US Developments failed to prepare such financial reports.

c. Under Section 4.2(n), the Developer was required to "obtain all necessary approvals, permits, licenses, plans, etc. to develop the Property consistent with the Owner's business." US Developments failed to obtain approvals or permits, and did not develop the property in any way.

d. Under Section 4.2(t), the Developer was required to "keep the Owner informed on a monthly basis, as to all significant matters pertaining to the Owner's Business." US Developments failed to provide Dorchester Holdings with monthly updates.

e. Under Section 4.2(aa), the Developer was required to "cause all necessary grading of the Property and all necessary utilities for the Property to be properly completed and installed." US Developments failed to cause the grading to be completed or any utilities to be installed.

f. Under Section 4.2(bb), the Developer was required to "maintain liability insurance on behalf of the Owner in the minimum amount of five million dollars ($5,000,000) until 180 days after the Property has been sold or transferred in its entirety." On information and belief, US Developments failed to maintain such liability insurance.

g. Under Section 4.2(dd), the Developer was required to "prepare an overall budget for the development of the Property and present same to Owner within 90 days of execution of this agreement. Thereafter the overall budget will be updated annually ('Annual Budget') and presented to the [O]wner on or before November 15 each year. It is agreed that, the Overall Budget, and each subsequent Annual Budget must be approved by the Owner."

5

After the initial budget presentation, US Developments failed to present any annual budget.

20. Because US Developments did not develop the Property and the purpose of the Development Agreement was frustrated, Dorchester Holdings has not paid "management services fees" or any other fees to US Developments since 2007.

## Count I – Declaratory Judgment
## Contract Void for Frustration of Purpose

21. Dorchester Holdings incorporates by reference Paragraphs 1 through 21 of this Complaint as if the same were fully set forth herein.

22. Dorchester Holdings and US Developments entered into the Development Agreement for the purpose of US Developments "providing management and development services" for the Property. *See* Development Agreement Statement of Purpose Section B.

23. That US Developments would be able to commercially develop the Property was a basic assumption on which the Development Agreement was made.

24. The Property cannot be developed as intended because multifamily development and most commercial development is no longer a permitted use of the Property, and thus, the expected value of US Development's development of the Property has been destroyed.

25. The historical overlay on the Property was adopted after Dorchester Holdings and US Developments entered into the Development Agreement, and the change in permitted uses to prevent development of the Property was not reasonably foreseeable.

26. Because the change in permitted uses was unforeseeable, Dorchester Holdings and US Developments did not allocate the risk of non-development of the Property between the parties.

27. Because the Property cannot be developed, because the development of the Property is the central purpose of the Development Agreement, and because the change in

6

permitted uses to prevent development was not reasonably foreseeable, the Development Agreement is void for frustration of purpose.

28. Therefore, Dorchester Holdings is entitled to a declaratory judgment that Development Agreement between Dorchester Holdings and US Developments is void and unenforceable for frustration of purpose and that Dorchester Holdings' duties to US Developments under the Development Agreement are discharged.

<b><u>Count II – Declaratory Judgment</u></b><br><b><u>Contract Void for Unconscionability</u></b>

29. Dorchester Holdings incorporates by reference Paragraphs 1 through 28 of this Complaint as if the same were fully set forth herein.

30. Dorchester Holdings entered into the Development Agreement with US Land in 2006, before purchasing the Property.

31. When Dorchester Holdings entered into the Development Agreement, Dorchester Holdings did not have a meaningful choice with respect to the Development Agreement.

32. Rosenburgh and US Land held unequal bargaining power over Ms. Munden, and US Land employed sharp and unfair practices to exploit Ms. Munden's vulnerability and lack of understanding.

33. The Development Agreement's terms are unreasonably favorable to US Developments. The following terms, among others, are harsh, oppressive, and one-sided:

    a. Under Section 3.1(b), the Property Owner is required to pay the Developer at least $5,000 per month in perpetuity.

    b. Under Section 3.1(c), the Property Owner is required to pay the Developer 30% of any appreciation in the Property's value upon sale.

    c.    Under Section 3.1(a), the Property Owner is required to pay the Developer 6% of the gross selling price when any portion of the Property is sold.

    d.    Under Section 4.4, the Property Owner cannot sell the Property without the Developer's consent, regardless of whether the Developer develops the Property.

34. US Developments did not develop the Property but seeks to enforce the above unconscionable terms against Dorchester Holdings.

35. Under N.C. Gen. Stat. § 25-2-302, this Court has the power to declare the Development Agreement unconscionable and therefore void and unenforceable.

36. Therefore, Dorchester Holdings is entitled to a declaratory judgment that Development Agreement between Dorchester Holdings and US Developments is void and unenforceable for unconscionability and that Dorchester Holdings' duties to US Developments under the Development Agreement are discharged.

## Count III – Rescission
## Mutual Abandonment of Contract

37. Plaintiff pleads this claim in the alternative, and notwithstanding the allegations set forth below, the preceding paragraphs shall remain in full force and effect.

38. US Developments has not performed under the Development Agreement since the historical overlay was adopted in at least the following ways:

    a.    US Developments failed to maintain books of account under Section 4.2(c) of the Development Agreement.

    b.    US Developments failed to prepare regular financial reports and submit them to Dorchester Holdings' lenders and investors under Section 4.2(m).

c.  US Developments failed to obtain approvals or permits or develop the Property under Section 4.2(n).

d.  US Developments failed to act as general manager for the completion of the development of the Property under Section 4.2(s).

e.  US Developments failed to provide Dorchester Holdings with monthly updates under Section 4.2(t).

f.  US Developments failed to cause grading or utilities to be completed or installed under Section 4.2(aa).

g.  US Developments failed to present annual budgets to Dorchester Holdings under Section 4.2(dd).

39. US Developments indicated it abandoned the Development Agreement by not performing its own obligations under the Development Agreement and by not demanding payment from Dorchester Holdings under the Development Agreement for nearly twenty years.

40. US Developments also indicated that it abandoned the Development Agreement by informing Ms. Munden and her accountant that Ms. Munden herself should "develop an entirely new plan" and engage another firm if she "wish[ed] to develop this site."

41. Dorchester Holdings also indicated it abandoned the Development Agreement by not paying compensation to US Developments for nearly twenty years.

42. Dorchester Holdings and US Developments have both abandoned the Development Agreement such that the Development Agreement should be rescinded.

**WHEREFORE**, Plaintiff prays for the following relief:

a.  a declaratory judgment that the Development Agreement between Dorchester Holdings and US Developments is void and unenforceable and that Dorchester

Holdings' duties to US Developments under the Development Agreement are discharged;

b. if the Court finds that the Development Agreement is not void, Dorchester Holdings seeks in the alternative a declaratory judgment that Dorchester Holdings and US Developments have abandoned the Development Agreement and that the Development Agreement is therefore unenforceable;

c. Attorney's fees and legal costs; and

d. Such other and further relief as may be just and proper.

Respectfully submitted,

WYCHE, P.A.

s/ James E. Cox Jr.
James E. Cox, Jr. (N.C. Bar. No. 57136)
Graham M. Pitman (N.C. Bar. No. 61191)
200 East Broad Street, Suite 400
Greenville, SC 29601
jcox@wyche.com
gpitman@wyche.com
Telephone: (864) 242-8200
Facsimile: (864) 235-8900

Date: July 24, 2025

*Attorneys for Plaintiff Dorchester Holdings I, LLC*